No. 12,280.

Employers' Mutual Insurance Co., et al. *v.* Industrial Commission, et al.

Decided May 6, 1929.

Mr. Frank C. West, Messrs. Webster, West & Drath, for plaintiffs in error.

Mr. Robert E. Winbourn, Attorney General, Mr. Arthur L. Olson, Assistant, for defendants in error.

*Department Two.*

Mr. Justice Moore delivered the opinion of the court.

The district court affirmed an award of the Industrial Commission ordering the payment of compensation to Carmen Trujillo, widow of Cerillos Trujillo, an employe of the Temple Fuel Company who was killed February 8, 1928, as a result of an accident arising out of and in the course of his employment. The award was for $2,690.63

or at the rate of $8.50 per week, which was determined by taking the total earnings of decedent for one year immediately preceding his death as a standard in computing his average weekly wage.

Plaintiffs in error contend that the Industrial Commission exceeded its jurisdiction in entering said award, and that said compensation should not exceed an aggregate amount of $2,165.63 or at the rate of $6.93 per week, the same being a compensation of 50 per cent of the average weekly wage for the statutory period based upon the amount earned by the decedent during the six months immediately preceding his death.

The record discloses that the deceased was killed February 8, 1928; that his total earnings from August 27, 1927 to February 8, 1928 were $360.42; and that he earned $895.04 during the year preceding his death.

The Industrial Commission found: ''The decedent's earnings for the year immediately prior to his death were $895.04. His earnings for the six months immediately prior to his death were $360.42. This case is typical of the earnings presented in the employment of coal mines.

''The commission is definitely committed to the idea that earnings of employes engaged in coal mining should be based upon the earnings for the year immediately prior to the particular accident rather than upon the six months' period, for the reason that coal mining is more or less seasonable in its operation; i. e., the average coal miner works reasonably steady during the winter months. He is not steadily employed during the summer months. The result is that if the employe is killed or injured during the early part of the coal mining season, he, or his dependents, receive a very low compensation, whereas if he is injured or killed at the close of the coal mining season, he, or his dependents are very likely to receive the maximum rate provided by law. This, to our mind, is not fundamentally correct and certainly authorizes the application of sub-division c of section 47 of the compensation act. We are, therefore, of the opinion that com-

pensation in this case should be based on the decedent's earnings for the entire year.

"It is, therefore, ordered that the respondents pay compensation to Carmen Trujillo, widow, at the rate of $37.37 per month, beginning February 8, 1928, and continuing on the 8th day of each and every month thereafter and until $2,690.63 is paid."

Section 4421, C. L. of 1921 provides:

"The average weekly wage of the injured employe shall be taken as the basis upon which to compute benefits and shall be determined as follows:

\* \* \*

"(b) The total amount earned by the injured or killed employe in the six months preceding the accident shall be computed, which sum shall be divided by twenty-six and the result thus ascertained shall be considered as the average weekly wage of said injured or deceased employe, for the purpose of computing the benefits provided by this act, except as hereinafter provided.

"(c) Provided, further, however, That in any case where the foregoing method of computing the average weekly wage of the employe by reason of the nature of the employment or the fact that the injured employe has not worked a sufficient length of time to enable his earnings to be fairly computed thereunder or has been ill or in business for himself or where for any other reason said methods will not fairly compute the average weekly wage, the commission may in each particular case compute the average weekly wage of said employe by taking the daily earnings at the time of the accident or compute it in such other manner and by such other method as will in the opinion of the commission, *based upon the facts presented,* fairly determine such employe's average weekly wage."

Plaintiffs in error contend that subsection b, supra, should control and that the record failed to disclose facts upon which the Industrial Commission were warranted in determining that the average weekly wage of the de-

cedent should be computed in accordance with the provisions of subsection c, supra. There is no merit in this contention.

The Industrial Commission undoubtedly had the right to take judicial notice of the fact that coal mining is seasonal in its operation. 23 C. J., p. 74, § 1844: "Judicial notice is taken of notorious facts connected with mines and their operation, of the common and general methods of locating and designating mines, of the rights of miners to be protected in the possession of their selected localities, of the risk and uncertainty of the business."

Therefore, it was proper to determine that six months' period would not be a fair standard by which to compute a coal miner's average weekly wage.

This being true, the commission was authorized to act pursuant to the provisions of subsection c, supra.

Judgment affirmed.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE BUTLER and MR. JUSTICE BURKE concur.