Mr. Justice Sutton
delivered the opinion of the Court.
Defendent in error, Arthur Fransua, who will be referred to herein by name or as the claimant, received an injury to his person while employed on a part-time basis by Berkeley Construction Company. He suffered a 5% permanent partial disability as a result thereof. At the time of the injury claimant was also employed full time with Gates Rubber Company. His work with Berkeley was, as indicated, on a part-time basis.
Fransua filed his claim for disability benefits and was awarded $40.25 per week; the referee found that his average weekly wage from Berkeley was $65. On petition for review the Industrial Commission approved *298 this award; and on appeal to the district court the ruling of the Industrial Commission was affirmed.
From the judgment of the district court Berkeley and the State Compensation Insurance Fund bring writ of error urging that Fransua’s average weekly wage from Berkeley was unfairly and erroneously computed and that such resulted in a larger award than was justified by the facts before the Commission.
The record shows that Fransua did occasional roofing work for Berkeley. He was paid at a rate of $3.25 per “square” of shingles laid. During the one year period immediately preceding the injury, i.e., from Nevember 20, 1961, to November 20, 1962, he earned a total of $824.79 doing roofing work. He estimated that, on the average, he worked a four hour period in the mornings on those days when he worked for Berkeley, laying approximately one square per hour. From these figures he computed, as did the referee, that he earned approximately $13 each day he worked, and had worked for Berkeley a total of 64 to 65 days at an average four hour work day in the year preceding the injury.
The portion of the statute utilized by the referee in computing claimant’s average weekly wage in this case is C.R.S. 1963, 81-8-1(3) (f) which provides:
“Where the employee is paid on a piecework, tonnage, commission, or any other basis except upon a monthly, weekly, daily, or hourly wage, and where the employment is but casual and in the usual course of the trade, business, profession, or occupation of his employer, the total amount earned by the injured or killed employee, in the twelve months preceding the accident shall be computed, which sum shall be divided by the number of days the injured person was employed during the twelve months immediately preceding the accident, and the result thus ascertained shall be considered the average daily wage of said employee; then the weekly wage shall be determined from said daily wage in the manner set forth in subparagraph (d) hereof.” *299 Subparagraph (d) of 81-8-1(3) provides for multiplication of the daily wage by not less than five for the purpose of determination of the weekly wage.
Plaintiffs in error contend that claimant’s average weekly wage should be computed not by the provisions of 81-8-1(3) (f) but rather under 81-8-1(4) which provides:
“Where the foregoing methods of computing the average weekly wage of the employee by reason of the nature of the employment or the fact that the injured employee has not worked a sufficient length of time to enable his earnings to be fairly computed thereunder, or has been ill or in business for himself, or where for any other reason said methods will not fairly compute the average weekly wage, the commission, in each particular case, may compute the average weekly wage of said employee in such other manner and by such other method as will, in the opinion of the commission based upon the facts presented, fairly determine such employee’s average weekly wage.”
They contend that, under this provision, the weekly wage should be determined by dividing the total yearly earnings of $842.79 by 52 for an average weekly wage of $16.21 instead of the $65 found by the Commission under 81-8-1(3) (f). They urge that use of the formula in the latter section could result in yearly benefits of $2,093 being paid to an employee whose total yearly earnings were only $842.79. We note in this connection, however, that the State Compensation Insurance Fund has already admitted liability in the amount of $26.67 per week (or $1,386.84 per year), thus the controversy here would appear to be over an additional $13.58 per week.
Plaintiffs in error further contend that Fransua’s employment could not be considered “casual and in the usual course of the trade, business, profession, or occupation of his employer,” and therefore his weekly wage could not be computed under the terms of 81-8-1 *300 (3) (f). We do not agree with this contention. In Heck-man v. Warren, 124 Colo. 497, 508, 238 P.2d 854 (1951), we had occasion to define the term “casual” in connection with employment. There we said:
“* * * An employment, therefore is casual within the meaning and intent of our Workmen’s Compensation Act when it is not regular, periodic or certain in nature. * * *J>
While here there is no specific finding, either by the Industrial Commission or by the trial court, to the effect that Fransua’s employment was casual, we must assume that each considered it to be such due to the fact that they applied 81-8-1 (3) (f). There is also ample evidence in the record to sustain such a finding, for it shows that Fransua received no work at all from Berkeley in November or December, 1961, January, February or September, 1962, and that his earnings in the other months ranged from $30 in October to $249.21 in June. It is conceded that he was paid on a piecework basis, and therefore the employment here clearly falls within the definition contained in 81-8-1 (3) (f).
Holding as we do that the work is casual and that 81-8-1(3) (f) is applicable, we turn now to the following question: Whether it should be applied in the instant case, i.e., whether its application is unfair under 81-8-1 (4) ? We answer this question in the negative. Application of the type of formula set out in 81-8-1 (3) (f) to determine average weekly wages results in a somewhat similar kind of award heretofore approved in Imperial Coal Co. v. Holland, 98 Colo. 448, 56 P.2d 30 (1936) (intermittent casual self-employment held on average to have been for 26 weeks out of the full year); and in Danielson v. Industrial Commission, 96 Colo. 552, 44 P.2d 1011 (1935) (where the Commission added the number of days worked during three week period to make a total of two weeks). Thus casual piecework, as here, can be averaged to determine the total number of days employed under 81-8-1(3) (f).
*301 It should be noted here that prior to the adoption of 81-8-1(3) (f) our court several times approved more liberal grants by judicial interpretation to claimants under the predecessor Act to 81-8-1(4) to avoid the restrictive type of interpretation urged here by plaintiffs in error. E.g., Williams Brothers, Inc. v. Grimm, 88 Colo. 416, 297 Pac. 1003 (1931); Employers’ Mutual Ins. Co. v. Industrial Commission, 85 Colo. 588, 277 Pac. 777 (1929); and Employers’ Mutual Ins. Co. v. Industrial Commission, 85 Colo. 374, 275 Pac. 939 (1929).
The judgment is affirmed.
Mr. Justice McWilliams and Mr. Justice Pringle not participating.