## Marsh, Appellant, *v.* Groner.

*Workmen's Compensation Law—Statutes — Construction — Repairs to house—Injuries to workman employed by owner—"Business"—Compensation—Refusal.*

1. It is an indispensable condition to the recovery of compensation under the Workmen's Compensation Law that the claimant show that he received his injury while engaged in the regular course of the business of his employer.

2. By necessary implication from section 104 of the act providing that the term "employee" is synonymous with "servant" and includes all natural persons who perform service for another for a valuable consideration, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer, only such employers are made liable under the act as are themselves engaged in regular business.

3. Statutes are presumed to employ words in their popular sense and when the words used are susceptible of more than one meaning the popular meaning will prevail. The term "business" as used in the act has reference to the habitual or regular occupation that a party is engaged in with a view to winning a livelihood or some gain.

4. Where a married woman residing with her husband in a house owned by her was engaged in enlarging and remodeling the dwelling and employed the claimant to do several days' plastering work about the premises, and a few hours after he commenced work he sustained personal injuries by the collapse of the scaffolding on which he was standing, the owner of the property was not engaged in any "business" within the meaning of the Workmen's Compensation Law, and was not liable to claimant for compensation.

5. In such case there is no merit in the contention that the mere circumstance of the owner being engaged in such work as the remodeling and enlarging of her house, the time consumed in the work extending over the best part of a year, constituted her a person engaged in regular business and made her liable for compensation to any employee who might be injured while engaged on such work.

Mr. Justice Moschzisker dissents.

Argued March 5, 1917; reargued April 16, 1917. Appeal, No. 333, January T., 1916, by plaintiff, from final order of C. P. Northampton Co., Sept. T., 1916, No. 80, setting aside award of Workmen's Compensation Board, in case of Sheridan N. Marsh v. Ida Groner. Before Brown, C. J., Mestrezat, Potter, Stewart, Moschzisker, Frazer and Walling, JJ. Affirmed.

Appeal from award of Workmen's Compensation Board. Before McKeen, J.

The opinion of the Supreme Court states the facts.

The court set aside the award of the Workmen's Compensation Board. Plaintiff appealed.

*Error assigned* was the order of the court.

*Everett Kent* and *Francis H. Bohlen*, for appellant.— The claimant was a regular and not a casual employee:

Blythe v. Sewell, 2 B. W. C. C. 476; Tombs v. Bomford, 5 B. W. C. C. 338; Cotter v. Johnson, 45 Irish L. T. 259.

The claimant was engaged in the regular course of the business of his employer, the defendant: State ex rel. Northfield v. District Court, Rice County, 155 N. W. Repr. 103; Cheever's Case, 219 Mass. 244; Scott v. Payne Bros., 85 N. J. Law. 446 (89 Atl. Repr. 927); Schaeffer v. De Grottola, 85 N. J. Law 444 (89 Atl. Repr. 921); Thompson v. Twiss et al., 97 Atl. Repr. 328; City of Milwaukee v. Miller, 154 Wis. 652 (144 N. W. Repr. 188); Kennerson v. Thames Towboat Co., 94 Atl. 372; Coakley's Case, 216 Mass. 73 (102 N. E. Repr. 930); Sullivan's Case, 218 Mass. 141 (105 N. E. Repr. 463); State ex rel. Virginia & Rainy Lake Co. v. District Court of St. Louis County, 128 Minn. 43, 150 N. W. Repr. 211; State ex rel. Duluth Brewing & Malting Co. v. District Court of St. Louis County, 129 Minn. 176, 151 N. W. Repr. 912; Oneida Steel Pulley Co. v. Workmen's Compensation Commission, 215 N. Y. 335; Costello v. Kelsall Bros. & Beeching, 6 B. W. C. C. 480; Dame, Seymour & Co.'s App., 62 Pa. 417; Hartman's App., 107 Pa. 327; Knight v. Bucknill, 6 B. W. C. C. 160.

*J. W. Paff,* of *Smith, Paff & Laub,* for appellee.—The plaintiff was clearly a casual employee of the defendant within the meaning of the Workmen's Compensation Act: Trenholm v. Hough (1914), 1 Cal. Ind. Acc. Com. 260; Hill v. Begg, L. R. (1908) 2 K. B. 802; Blythe v. Sewell, 2 B. W. C. C. 476; Cotter v. Johnson, 45 Irish L. T. 259; Tombs v. Bomford, 5 B. W. C. C. 338; Sabella et al. v. Brazileiro, 86 N. J. L. 505 (91 Atl. Repr. 1032); In re Gaynor, 217 Mass. 86.

The plaintiff was not employed in the defendant's business as the defendant had no business: Smith v. Anderson, L. R. 15 Ch. Div. 258; Trustees of Columbia College v. Lynch et al. (N. Y.), 47 How. Pract. 273; Chadwick v. Collins, 26 Pa. 138; Barton v. Morris, 10 Philadelphia 360.

OPINION BY MR. JUSTICE STEWART, June 30, 1917:

This case arises under the Workmen's Compensation Act of June 2, 1915, P. L. 736, and is brought here on appeal from the Court of Common Pleas of Northampton County. It was there considered on appeal from an order of the Workmen's Compensation Board awarding a claimant—here the appellant—certain compensation for injuries sustained in the employment of this appellee. The court there held, revoking and setting aside the order of the Compensation Board, that the claimant's injury was not received while he was engaged in the business of his employer, and that therefore he was not entitled to compensation under the act. The appeal brings the same question before us, and to that we are confined. The material facts are few and simple. The defendant is a married woman residing with her husband in a house owned by herself. In the course of enlarging and remodeling her dwelling she engaged the claimant to do some plastering work about the premises which, to complete, would require at most a couple days. Claimant had been engaged in the work for only a few hours when the scaffolding on which he was standing gave way, and with it he fell to the ground and was injured. Further statement of facts is unnecessary except to say that there is not a suggestion in the case that the defendant, the employer, in remodeling her house, had any other object in view than to make the house more convenient and attractive for her own and her family's comfort and enjoyment; nor is it anywhere suggested that aside from this work and her household duties she had anything of business character to engage her time or attention. Admittedly she had never been engaged in trade. It is the contention of the appellant that the mere circumstance of her being engaged in such work as the remodeling and enlarging of her house, the time consumed in this work extending over the best part of a year, constituted her a person engaged in regular business and made her liable

under the act for compensation to any employee who might be injured while engaged upon such work.

It is an indispensable condition to his recovery under this act that the claimant show that he received his injury while engaged in the regular course of the business of his employer. Section 104 of the act reads: "The term 'employee,' as used in this act, is declared to be synonymous with servant, and includes all natural persons who perform services for another for a valuable consideration, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer." We derive from this by necessary implication that only such employers are made liable under the act as are themselves engaged in regular business. This must be so if any effect whatever is to be given the exclusion clause. Without attempting to elaborate further this proposition, we proceed at once to inquire as to the actual situation here. Do the facts as we have indicated them show that the employer—the appellee—was engaged in any regular business within the meaning of that term as used in the act? If they do, or can be reasonably so construed, then the case was improperly decided against the claimant; if otherwise, he could have no right to recover, since the act expressly excludes all not employed in the course of the regular business of the employer. If the employer have no regular business, it follows that the employee was not injured within the condition prescribed. What gives rise to the question is the indefiniteness and want of precision of meaning of the word "business" as it occurs in the act. It is a word which embraces a wide variety of subjects, and being without a technical or precise meaning, excluding any other, it may convey an entirely different meaning in one connection from what it imports when used in another. In such cases when, as here, no help can be derived from the context, and none from the use of the same word in other sections of the act, the interpreter has no other recourse than to the presumption that the

word was used in the popular sense, if that be found agreeable, that is, not contradictory to the object and intention of the lawmaker.

Statutes are presumed to employ words in their popular sense, and when the words used are susceptible of more than one meaning, the popular meaning will prevail. Where the meaning involves no absurdity and is not in conflict with the other parts of the act, it is the only one that can be presumed to have been intended and there is no room for construction: Cooley on Constitutional Limitations, pl. 68. There are few words more current in our speech than the word "business"; few that include a greater variety of subjects and yet none which, in popular speech, has greater or more marked singleness in denotement. When one's business is the subject of common speech, no one can be in doubt as to the reference. It would be a very exceptional person—we do not know how to otherwise describe him—who would not understand that the reference is to the habitual or regular occupation that the party was engaged in with a view to winning a livelihood or some gain. These objects are necessarily implied when one's business is spoken of. Eliminate them, livelihood and gain, and it is no longer business, but amusement, which no one ever confounds with business. What we have said as to the popular understanding of the word business is just what Webster defines it, "Some particular occupation or employment habitually engaged in for livelihood or gain." The points of difference between the employment the defendant was engaged in and the business which is contemplated by the act and understood in common parlance, are so marked that the two cannot be confounded; one cannot be the equivalent of the other. The defendant's employment was not in any way dependent on patronage; it had not for its object profit or gain, but simply her own personal gratification and comfort; it was not regular or habitual, but it terminated with the completion of the one thing that engaged

her attention at the time, and there is not the slightest indication that she contemplated resuming or doing a like service for another, nor indeed that she had ever attempted anything of the kind before. Other points of difference can readily be suggested, but these are quite sufficient for our purposes. Our conclusion is that the defendant was not engaged in any business within the proper meaning of that term as used in the act, and therefore the claimant when injured was not employed in the manner prescribed by the act. His employment, like that of his employer, was casual in character. The assignment of error is therefore overruled and the judgment of the court below is affirmed.

DISSENTING OPINION BY MR. JUSTICE MOSCHZISKER:

The act of assembly which governs the present case excludes from its operation all "persons whose employment is casual in character and not in the regular course of the business of the employer." The majority, in order to arrive at the determination reached by them, in effect, change this phraseology from "the regular course of the business" to "the course of the regular business" of the employer. I believe in as liberal an application of the Workmen's Compensation plan as possible; and, since I see no warrant in law for making this change, which unduly narrows the act, I note my dissent.